NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | Case No. 08-13555 (JMP) |
| Debtors. | |
| MAXIMILIAN CORETH, Plaintiff, v. BARCLAYS CAPITAL INC., Defendant. | Adv. Proc. No. 09-01045 (JMP) |
| OLIVIA BAM, Plaintiff, v. BARCLAYS CAPITAL INC., Defendant. | Adv. Proc. No. 09-01130 (JMP) |

## MEMORANDUM DECISION GRANTING MOTIONS TO DISMISS

EATON & VAN WINKLE LLP
*Attorneys for Maximilian Coreth*
3 Park Avenue
New York, NY 10016

    Robert K. Gross, Esq.
    George P. Birnbaum, Esq.

VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.
*Attorneys for Olivia Bam*
1501 Broadway
New York, NY 10036

    Valdi Licul, Esq.

SULLIVAN & CROMWELL LLP
*Attorneys for Barclays Capital Inc.*
125 Broad Street
New York, NY 10004

    Theodore O. Rogers, Jr., Esq.

**JAMES M. PECK**
**United States Bankruptcy Judge**

*Introduction*

In this decision, the Court considers the adequacy of complaints[1] that raise similar issues concerning the legal standing of each of two former employees of Lehman Brothers Inc. ("LBI") to bring claims to recover bonus compensation against Barclays Capital Inc. ("Barclays").  These two separate actions also implicate the protection afforded to Barclays under the bankruptcy court order entered on September 20, 2008 (the "Sale Order") that approved the purchase by Barclays of the North American broker-dealer and investment banking operations of LBI (the "Broker-Dealer Business").  The two complaints assert that Barclays should be found liable to the plaintiffs each of whom worked in different capacities for the Broker-Dealer Business and were hired for a period of time by Barclays following its acquisition of that business.

The plaintiff in each case – Maximilian Coreth ("Coreth") in *Maximilian Coreth v. Barclays Capital Inc.* (Adv. Proc. No. 09-01045) (the "Coreth Adversary Proceeding"), and Olivia Bam ("Bam") in *Olivia Bam v. Barclays Capital Inc.* (Adv. Proc. No. 09-01130) (the "Bam Adversary Proceeding") – is a former employee of LBI.  Barclays hired the plaintiffs and an entire workforce of former LBI employees under the terms of that certain Asset Purchase Agreement Among Lehman Brothers Holdings Inc. ("LBHI"

---

[1] On May 7, 2009, Olivia Bam filed an Amended Complaint in the Bam Adversary Proceeding [Docket No. 11].  This Memorandum Decision addresses the Amended Complaint.

and, together with LBI, "Lehman"), LBI, LB 745 LLC and Barclays, dated as of September 16, 2008 (the "APA"), whereby Barclays agreed to purchase certain assets and assume certain liabilities[2] relating to Lehman's Broker-Dealer Business.

The Sale Order[3] approving the APA included various provisions in which Barclays agreed to assume certain liabilities to Lehman employees and to provide specified employee benefits. Under the terms of the APA, with minor exceptions, Barclays offered employment to each active Lehman employee and agreed, with respect to each such employee who accepted Barclays' offer of employment (each, a "Transferred Employee") and whose employment was terminated prior to December 31, 2008 by reason of a reduction in force or job elimination, to provide severance payments and benefits at levels no less favorable than such terminated Transferred Employee would have been entitled to receive pursuant to applicable Lehman severance plans or agreements.

Each of Coreth and Bam became a Transferred Employee and was terminated prior to December 31, 2008. In their complaints, Coreth and Bam separately claim that Barclays is responsible for payment of a guaranteed bonus that was a term of his or her respective employment agreement with Lehman. Bam also contends that her guaranteed bonus constituted wages and that the failure by Barclays to pay this bonus is a violation

---

[2] The APA defined those assets that Barclays agreed to purchase thereunder as "Purchased Assets" and those liabilities that Barclays agreed to assume thereunder as "Assumed Liabilities."

[3] As the parties are aware, the APA and the Sale Order were the subject of a lengthy trial (the "60(b) Trial") that commenced in April 2010 and concluded in October 2010 and that, among other things, (i) challenged the right of Barclays to rely on the Sale Order due to alleged failures to disclose material information at the sale hearing relating to the purchase of the Broker-Dealer Business, and (ii) dealt with the extent, scope and performance of commitments made by Barclays with respect to Transferred Employees such as Coreth and Bam. Given the potential impact of these issues on the motions brought by Barclays to dismiss the complaints of Coreth and Bam, the Court delayed resolving these motions until after issuing its decision on the issues raised at trial. *See Opinion on Motions Seeking Modification of the Sale Order Pursuant to Rule 60(b), the Trustee's Motion for Relief Under the SIPA Sale Order, Barclays' Cross-Motion to Enforce the Sale Orders and Adjudication of Related Adversary Proceedings.* Case No. 08-13555, ECF No. 14612.

3

of New York Labor Law.

Barclays has filed motions to dismiss the complaints in the two adversary proceedings asserting that plaintiffs lack standing to assert claims under the APA. Barclays also submits that it did not assume the employment agreement of either Coreth or Bam and so has no liability under these agreements for any payments that may have been Lehman's responsibility. With respect to Bam, Barclays argues that her statutory wage claim must be dismissed in the absence of any enforceable contractual right against Barclays for the payment of her guaranteed bonus.

For the reasons that follow, the Court finds that the plaintiffs have failed to state claims against Barclays upon which relief may be granted and dismisses the complaints of Coreth and Bam without leave to file amended complaints.

### *Rule 12(b)(6) Standard*

Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.*

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Twombley*, 550 U.S. at 949. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950. Therefore, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

### *Background*

On April 18, 2008, Coreth executed an employment agreement with LBI (the "Coreth Employment Agreement"), pursuant to which he agreed to join LBI as a Managing Director in its Fixed Income Division. Coreth Compl. ¶¶ 1-2, Ex. A. The Coreth Employment Agreement describes Coreth's compensation for performance years 2008 and 2009[4] to include an annualized base salary of $200,000 and a "bonus in the amount of $9,800,000." Coreth Compl. Ex. A at 1. The Coreth Employment Agreement further provides that "in the event [Coreth's] employment is terminated by [LBI] without Cause before the payment in full of the guaranteed minimum bonus for performance years 2008 and 2009, [Coreth] will be paid … any unpaid guaranteed minimum bonus for such years, payable part in cash and part in conditional equity awards … ." Coreth Compl. Ex. A at 2.

On March 27, 2008, Bam executed an employment agreement with LBI (the "Bam Employment Agreement"), pursuant to which she agreed to join LBI as a Salesperson with the corporate title of Vice President in the Fixed Income Division. Bam Am. Compl. ¶¶ 9, 11, 12, Ex. A. The Bam Employment Agreement describes Bam's

---

[4] The Coreth Employment Agreement describes performance year 2008 as Coreth's start date through November 30, 2008 and performance year 2009 as December 1, 2008 through November 30, 2009.

5

compensation for performance year 2008[5] to include a bi-weekly base salary of $4,423.08 – the equivalent of $115,000 per year – and a "minimum bonus in the amount of $185,000." Bam Am. Comp. Ex. A at 1. The Bam Employment Agreement further provides that the "bonus … will not be payable if … before the date of scheduled payment, [Bam … has] been terminated from [LBI]" for cause. Bam Am. Compl. Ex. A at 1.

Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries each filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[6] Coreth Compl. ¶ 16; Bam Am. Compl. ¶ 13. Lehman and Barclays signed the APA on September 16, 2008, at which time Coreth and Bam still were employed by LBI. Coreth Compl. ¶¶ 20-21, Ex. B; Bam. Am. Compl. ¶¶ 14-16, Ex. B. Following a lengthy hearing that included references to the assumption by Barclays of certain compensation and severance obligations to Lehman employees, the Court signed the Sale Order approving the APA on September 20, 2008. Coreth Compl. ¶ 23, Ex. C; Cafasso Decl. Ex. B.[7]

Under Paragraph S of the Sale Order, the Court confirmed that Barclays would not be subjected to successor liability and made the following findings that Barclays assumed no liabilities other than the Assumed Liabilities:

---

[5] The Bam Employment Agreement describes performance year 2008 as December 1, 2007 through November 20, 2008.

[6] Pursuant to a Complaint and Application of the Securities Investor Protection Corporation, on September 19, 2008, the United States District Court for the Southern District of New York entered an Order Commencing Liquidation, which (i) ordered, adjudged and decreed that the customers of LBI were in need of the protection afforded by the Securities Investor Protection Act ("SIPA"), (ii) appointed a trustee "for the liquidation of the business of LBI with all the duties and powers of a trustee as prescribed in SIPA" and (iii) referred the liquidation proceeding (the "SIPA Liquidation Proceeding") to this Court.

[7] In ruling on a motion to dismiss, the Court may consider documents omitted from the plaintiff's complaint but attached by a defendant to its motion to dismiss. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d. Cir. 1991) (district court may consider exhibits omitted from plaintiff's complaint but attached as exhibits to defendant's motion papers because "there was undisputed notice to plaintiffs of their content and they were integral to plaintiff's claim").

> **No Successor Liability.** Except for the Assumed Liabilities, the transfer of the Purchased Assets … to [Barclays] under the [APA] shall not result in (i) [Barclays] having any liability or responsibility for any claim against [Lehman] … or (ii) [Barclays] having any liability or responsibility to [Lehman] except as is expressly set forth in the APA. Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the Purchased Assets … from [Lehman] to [Barclays] does not and will not subject [Barclays] … to any liability for claims … against [Lehman] … by reason of such transfer … including, without limitation, any successor liability.

Coreth Compl. Ex. C ¶ S; Cafasso Decl. Ex. B ¶ S.

Additionally, Paragraph 7 of the Sale Order enjoins the assertion of any claims against Barclays relating to or arising out of its purchase of the Purchased Assets and provides that:

> [e]xcept as expressly permitted by the [APA] or by this Sale Order, all persons and entities … holding Interests or Claims of any kind or nature whatsoever against or in [Lehman] or [Lehman's] interests in the Purchased Assets … arising under or out of, in connection with, or in any way relating to, [Lehman], the Purchased Assets, the operation of [Lehman's] businesses before the Closing Date or the transfer of [Lehman's] interests in the Purchased Assets to [Barclays], shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against [Barclays] … such persons' or entities' Interests or Claims.

Coreth Compl. Ex. C ¶ 7; Cafasso Decl. Ex. B ¶ 7. Similarly, the APA is structured to prevent the assertion of any claims by third parties, stating that "[n]othing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement." Coreth Compl. Ex. B § 13.9; Bam Am. Compl. Ex. B. § 13.9.

Article IX of the APA, entitled Employee Benefits, sets forth the extent of Barclays' obligations to provide severance payments and benefits to the Transferred Employees and states, in pertinent part, that:

7

> [Barclays] shall … provide to each Transferred Employee whose employment is terminated [prior to December 31, 2008] by [Barclays] by reason of a "reduction in force" or a "job elimination" … severance payments and benefits at levels that are no less favorable than such levels as the Transferred Employee would have been entitled to receive pursuant to the provisions of [Lehman's] severance plans or agreements covering such Transferred Employee as in effect immediately prior to the Closing.

Coreth Compl. Ex. B § 9.1(b); Bam Am. Compl. Ex. B § 9.1(b). Section 2.3 of the APA defines, *inter alia*, "all Liabilities assumed under Article IX" as Assumed Liabilities. Coreth Compl. Ex. B § 2.3 (c); Bam Am. Compl. Ex. B § 2.3(c). Section 2.4 of the APA also insulates Barclays from other employment-related liability, making clear that

> [Barclays] will not assume or be liable for … [*inter alia*] … any Liabilities relating to the employment, potential employment or termination of employment of any Person relating to or arising out of any period prior to the Closing, including without limitation any Liability under or relating to any employee benefit plan, program, agreement or arrangement, including in respect of equity compensation plans and … pension or saving plans as to which the parties agree there shall be no transfer to or assumption of Liabilities by [Barclays].

Coreth Compl. Ex. B § 2.4(d); Bam Am. Compl. Ex. B § 2.4(d).

On September 22, 2008, Barclays offered each of Coreth and Bam continued employment pursuant to the terms of the APA. Coreth Compl. ¶ 26, Ex. E; Bam Am. Compl. ¶ 20, Cafasso Decl. Ex. C. In its e-mail extending offers of employment to each plaintiff, Barclays states that "[a]s a Barclays employee, you will continue to receive your current base salary or applicable commission based remuneration." Coreth Compl. Ex. E; Cafasso Decl. Ex. C. Barclays did not make any commitment in either of the e-mails offering employment to make any bonus payment or assume any obligation arising under any LBI employment contract. Coreth Compl. Ex. E; Cafasso Decl. Ex. C. These e-mails also stated plainly that each plaintiff would "be an 'at-will' employee of Barclays." Coreth Compl. Ex. E; Cafasso Decl. Ex. C.

8

Coreth and Bam accepted Barclays' offers of employment, but Barclays made the decision to terminate the employment of each of the plaintiffs[8] as part of a reduction in force or job elimination in accordance with the terms of the APA. Coreth Compl. ¶ 5; Bam Am. Compl. ¶¶ 21, 23. Upon Coreth's termination, Barclays offered him a separation package that included 26 weeks of severance pay, benefits continuation and a "special lump sum payment" of $1,960,000. Coreth Compl. ¶ 27, Ex. F. Upon Bam's termination, Barclays offered a severance payment to her in the approximate amount of $50,000. Bam. Am. Compl. ¶ 27. Each of the plaintiffs chose to reject the severance proposal offered by Barclays, which was conditioned on a waiver and general release of any legal claims against Barclays.

On February 12, 2009, Coreth commenced the Coreth Adversary Proceeding, asserting a breach of contract claim against Barclays under the APA. Coreth Compl. ¶¶ 29, 30.[9] On March 19, 2009, Barclays filed its Motion to Dismiss Adversary Complaint, contending that plaintiff's suit is barred by a "no third-party beneficiary clause" and because Barclays did not assume the obligation that Coreth alleged had been breached.

On February 26, 2009, Bam commenced an action in the Supreme Court of the State of New York, County of New York, asserting claims against Barclays (i) for breach of contract and (ii) under Section 193(1) of the New York Labor Law. Bam Adversary Proceeding, ECF No. 1. On March 20, 2009, Barclays filed a Notice of Removal under 28 U.S.C. § 1452(a). Bam Adversary Proceeding, ECF No. 1. The Bam Adversary

---

[8] Coreth was terminated on October 14, 2008. Bam was terminated on November 20, 2008.
[9] Coreth also filed a proof of claim in the SIPA Liquidation Proceeding, alleging that LBI is liable to him to the extent Barclays fails to meet its alleged obligation to pay him $19.6 million, plus attorney's fees and costs. Coreth Compl. ¶ 30.

9

Proceeding subsequently was referred to this court on March 23, 2009.  Bam Adversary Proceeding, ECF No. 1.

On April 1, 2009, Barclays moved to dismiss Bam's complaint for failure to state a claim upon which relief can be granted.  Bam Adversary Proceeding, ECF No. 3.  On May 7, 2009, after Bam filed her Memorandum of Law in Opposition to Barclays Capital Inc.'s Motion to Dismiss Complaint Bam Adversary Proceeding, ECF No. 9, Bam filed an Amended Complaint in which she asserts an additional breach of contract claim based on the allegation that Barclays breached its employment agreement with her.  Bam Am. Compl. ¶¶ 33-37.

The parties submitted their briefs[10] and presented oral argument with respect to each of the motions to dismiss, and the Court reserved decision on these motions for over a year due to the potential impact on the Coreth Adversary Proceeding and the Bam Adversary Proceeding of unrelated litigation that sought relief from the Sale Order under Rule 60(b) of the Federal Rules of Civil Procedure and that, among other things, raised questions concerning the adequacy of disclosures that had been made to the Court with respect to the liabilities assumed by Barclays under the APA for the compensation of former Lehman employees.

---

[10] On or after June 25, 2009, the Court contacted Barclays and Coreth to request further briefing addressed to the impact, if any, of discovery taking place in anticipation of the 60(b) Trial on the Coreth Adversary Proceeding.  Accordingly, briefing in the Coreth Adversary Proceeding concluded on August 5, 2009, upon Barclays' filing of its response to Coreth's July 31, 2009 letter brief filed in response to the Court's request.  Coreth Adversary Proceeding, ECF Nos. 19, 20.  On January 21, 2011, however, the Court received an unauthorized supplemental letter brief from counsel to Coreth.  In the brief, counsel again urges the court to deny Barclays' motion to dismiss and sets forth arguments related to (i) statements made and positions taken by Barclays at the 60(b) Trial that allegedly contradict its assertions in support of its motion to dismiss the Coreth Adversary Proceeding, and (ii) exhibits introduced at the 60(b) Trial to which Coreth requests access.  Counsel to Barclays responded to the letter brief on February 1, 2011.  On February 10, 2011, counsel to Coreth sent another letter to the Court stating that he would reply to Barclays' response not later than February 17, 2011.  The Court received the reply on February 22, 2011.  Given the procedural posture of this matter, the Court declines to consider any argument set forth in any of these letter briefs except to note that no argument set forth in any supplemental letter brief affects the Court's findings or analysis with respect to Barclays' motion to dismiss the Coreth Adversary Proceeding.

*Discussion*

*Coreth*

Coreth bases his breach of contract claim on the fact that his employment was "duly transferred from LBI to Barclays in accordance with the APA, the [Sale Order] and [the Coreth Employment Agreement]." Coreth Compl. ¶ 26. Coreth contends that Barclays, by its October 14, 2008 separation package offer, "repudiated its severance obligations" to him when it offered as severance "approximately one tenth of the severance obligation that Barclays had expressly assumed with respect to [Coreth] in accordance with the [APA] and the [Sale Order]." Coreth Compl. ¶ 27. Coreth also alleges that Barclays' severance offer provides "strong evidence … that Barclays fully understood its obligation to provide severance payments and benefits to [him] at the level in [his] agreement with LBI." Coreth Br. Opp'n. at 4-5.

In support of dismissal, Barclays relies on (i) Coreth's lack of standing to assert a claim under the APA due to its inclusion of a "no third-party beneficiary clause," (ii) the fact that Barclays did not assume Coreth's employment agreement with LBI, and (iii) controlling New York Law providing that a so-called negating clause is fully enforceable as a matter of law. Mot. Dismiss ¶ 6; Br. Supp. at 1-2. Barclays also points out that, apart from defects relating to lack of standing as a third-party beneficiary, Coreth still would not be entitled to compensation because Barclays never agreed to pay the bonuses promised in Coreth's contract with LBI. Br. Supp. at 2. The Court concurs with this argument and concludes that Coreth's complaint fails to state a claim upon which relief may be granted.

11

It is undisputed that the APA is governed by the "laws of the State of New York applicable to contracts made and performed in such State." Coreth Compl. Ex. B § 13.6. Under New York law, a party who asserts rights as a third-party beneficiary under a contract must establish

> (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [the third party's] benefit and (3) that the benefit to [the third party] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [the third party] if the benefit is lost.

*Mendel v. Henry Phipps Plaza W., Inc.*, 844 N.E. 2d 748, 751 (N.Y. 2006).

Here, the only parties to the APA are Lehman and Barclays, and, under that agreement, Barclays was careful in agreeing to assume only specifically identified liabilities relating to employee compensation. Former employees were expressly excluded as third-party beneficiaries under the unambiguous language of the negating clause that appears in § 13.9 of the APA. This provision of the agreement conclusively establishes that former employees have no rights under the APA and effectively takes away the argument that Article IX of the APA is intended to benefit Transferred Employees.

New York law is clear on the point. The inclusion of a negating clause in a contract is decisive in determining that a party lacks standing to claim third-party beneficiary status. *See, e.g.*, *India.com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) (explaining that "[w]here a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, … that provision is decisive") (internal quotation marks and citations omitted).

12

Accordingly, the language of a contract that expressly negates the rights of third parties effectively eliminates such rights. Here, the negating language could not be clearer in stating that nothing in the APA "shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement." Coreth Compl. Ex. B § 13.6. The Sale Order also implements this language by providing that "all persons and entities … are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against [Barclays]" any claims relating to the APA, "[e]xcept as expressly permitted by the [APA]" or by the Sale Order. Coreth Compl. Ex. C ¶ 7.

Coreth recognizes that he is asserting third-party rights under the APA, but asserts that the negating clause of the APA is inapplicable in this instance because Barclays allegedly assumed the particular obligation to pay bonus compensation set forth in his employment contract with LBI. Coreth Br. Opp'n at 17-21. Coreth does not cite to any provision of the APA or the Sale Order where Barclays expressly assumes the Coreth Employment Agreement. Instead, he relies on authorities that permit direct claims by a third party against a buyer when the contract provides for assumption by the buyer of the seller's obligation to a third party. Coreth Br. Opp'n at 17-21. Such case law is inapplicable to a situation such as this in which Barclays did not assume the Coreth Employment Agreement and took steps to limit its exposure to the claims of former employees.

Coreth also argues that he has a "direct contract claim against Barclays under a two-party agreement" based on the alleged incorporation of the bonus terms of the Coreth Employment Agreement into Barclays' September 22, 2008 employment offer. Coreth

13

Br. Opp'n. at 23-25; Coreth Compl. Ex. E.  It is clear, however, that the written offer of employment from Barclays does not refer to the Coreth Employment Agreement and does not mention the bonus provisions of that agreement.  Coreth Compl. Ex. E.  The only reference to compensation states that Coreth would "continue to receive [his] current base salary or applicable commission based remuneration."  Coreth Compl. Ex. E.  The offer also states that Coreth would be an at-will employee of Barclays and, therefore, would "be required to comply with all applicable Barclays rules, regulations and policies … ."  Coreth Compl. Ex. E.

When pressed at oral argument, counsel to Coreth relied on jurisprudence allowing asset purchasers to assume obligations "by category especially in reference to employees covering a variety of agreements that are not presented individually to the court" and asked to submit a subsequent letter brief on the issue.  05/13/09 Tr. 59:21-24.  In subsequent briefing, Coreth failed to cite any case (nor is the Court independently aware of any case) where a contract such as the Coreth Employment Agreement was inferentially assumed by virtue of broad language in an asset purchase agreement.  Coreth Supplemental Br. Opp'n at 2-6.  Given the language and structure of the APA, such a conclusion would also frustrate the obvious efforts by Barclays to eliminate successor liability and delineate its exposure to the claims of former employees.

In order to effect proper assumption of an executory contract such as the Coreth Employment Agreement, section 365 of the Bankruptcy Code requires (i) a formal motion by a debtor seeking authorization for assumption of a contract and (ii) court approval of the assumption.  11 U.S.C. § 365(a).  Coreth has failed to demonstrate compliance with section 365.

14

In his supplemental brief, Coreth explains that he is "not claiming that Barclays assumed LBI's entire contract with [him]." Coreth Supplemental Br. Opp'n at 2-6. He argues instead that Barclays assumed, under §§ 2.3(c) and 9.1(b) of the APA, "the obligation to provide severance payments and benefits to Transferred Employees that LBI had agreed to, regardless of whether such benefits were set forth in a 'plan' or a separate 'agreement,' such as the [Coreth Employment Agreement]." Coreth Supplemental Br. Opp'n at 2.

However, nothing in Article IX of the APA can be read to suggest that Barclays assumed any bonus obligations arising under the Coreth Employment Agreement. Coreth Compl. Ex. B Art. IX. Section 2.4(d) of the APA, when read in conjunction with Article IX, establishes that Barclays has declined to assume liabilities "under or relating to any employee benefit plan, program, agreement or arrangement" except for the limited obligation to pay "severance payments and benefits" in accordance with the terms of Article IX. Coreth Compl. Ex. B. § 2.4(d). Thus, Article IX clearly governs severance obligations, and Coreth cannot properly characterize the guaranteed bonus payments under the Coreth Employment Agreement as "severance."

For the reasons stated, the Court grants the motion to dismiss the complaint in the Coreth Adversary Proceeding and finds that Coreth, as a third-party beneficiary, does not have standing to assert any compensation claims against Barclays that relate to or arise out of the Coreth Employment Agreement. Independent of his lack of standing, Coreth also has failed to state a viable claim against Barclays both because Barclays never assumed the Coreth Employment Agreement and Barclays has no obligation under

15

Article IX of the APA to make any payment to Coreth, regardless of whether such a payment is deemed to be a bonus or severance.

*Bam*

Bam sets forth three causes of action in her Amended Complaint. Two are breach of contract claims. In the first, Bam claims that Barclays violated the Bam Employment Agreement, alleging that Barclays "expressly or impliedly assumed" LBI's contractual obligations pursuant to the APA. Bam Am. Compl. ¶ 30. In the second, Bam alleges that Barclays violated its own September 22, 2008 employment offer by failing to pay the bonus amount set forth in the Bam Employment Agreement because such offer "incorporat[ed] the same terms that governed [Bam's] employment with [LBI]." Bam Am. Compl. ¶ 34. Bam's third cause of action asserts that Barclays reduced her wages in violation of New York Labor Law § 193(1) by failing to pay the guaranteed minimum bonus set forth in the Bam Employment Agreement.

With the exception of the third cause of action, these counts are comparable to those asserted in the Coreth Adversary Proceeding and suffer from the same legal infirmities. Regardless of how she may characterize her claims, like Coreth, Bam necessarily is bringing her claims as a third-party beneficiary of the APA and is unable to overcome the operative language of the APA that negates the rights of third parties to sue Barclays. Without directly acknowledging that her claims are being made as a third-party beneficiary under the APA,[11] Bam does contest the statement by Barclays that she "has no enforceable right as a purported third-party beneficiary of the [APA]." Bam Br.

---

[11] Bam has stated that she "does not claim that she is a third-party beneficiary of the APA." Br. Supp. at 4, *citing* Bam Br. Opp'n at 2. Notwithstanding that statement, Bam cannot escape from the fact that she is a third party who is seeking relief from Barclays that is dependent upon an interpretation of the APA and the Sale Order.

16

Opp'n at 13.  However, it is undeniable that Bam is pursuing claims in her capacity as a third-party beneficiary.

The APA negates claims such as those brought by Bam against Barclays and provides that nothing within the text "shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement."  Bam Am. Compl. Ex. B § 13.6.  Accordingly, for reasons stated earlier in this decision with respect to Coreth's standing to bring claims, Bam also lacks standing and is precluded from suing Barclays for breach of contract claims to the extent that these claims are based on the APA.

Bam's breach of contract claims also should be dismissed for other reasons.  First, she contends that, pursuant to Article IX of the APA, Barclays "expressly or impliedly assumed [LBI's] obligations to her arising from" the Bam Employment Agreement.  Bam Am. Compl. ¶ 29.  However, as noted above in reference to the Coreth claims, assumption and assignment of an executory contract only can occur by means of complying with the requirements of section 365 of the Bankruptcy Code.  That has not happened here, and Bam has not alleged and is unable to show such compliance.

Moreover, particularly where the parties to the APA have addressed the issue of Barclays' liability for employee compensation with such evident care, the Court is unable to overlook the fact that the Bam Employment Agreement was not formally assumed as part of the acquisition.  The circumstances of Bam's employment by Lehman and Barclays and the subsequent termination of her employment by Barclays do not support any reasonable inference that the parties to the APA ever intended to assume her employment agreement.  The Court also is not aware of any authority that would support

17

a finding that an executory contract may be assumed inferentially.  Practice under Section 365 of the Bankruptcy Code simply does not operate by stealth.

Like Coreth, Bam relies on the APA as approved by the Sale Order in asserting that "Barclays … assumed Bam's employment relationship with [LBI], including the obligation to pay her guaranteed bonus."  Bam Br. Opp'n at 7.  That allegation amounts to little more than wishful thinking.  Nothing in Article IX of the APA indicates that Barclays assumed any obligation to pay bonus compensation specified in the Bam Employment Agreement (or any other employment agreement for that matter).  Bam Am. Compl. Ex. B Art. IX.  Barclays is only obligated under the particular executory contracts that it actually assumed, and Article IX of the APA does not impose phantom contractual obligations.  Accordingly, the first breach of contract cause of action does not state a claim upon which relief may be granted.

The second breach of contract claim – that Barclays breached its September 22, 2008 employment offer to Bam by failing to pay her the bonus amount set forth in the Bam Employment Agreement – is based on the unsubstantiated contention that the September 22, 2008 employment offer "incorporat[ed] the same terms that governed [Bam's] employment with [LBI]."  Bam Am. Compl. ¶ 34.  That contention is rebutted by the actual September 22, 2008 employment offer that "does not say anything about Bam's guarantee."  Bam Br. Opp'n at 17, n. 8; Cafasso Decl. Ex. C.  As in the case of Coreth's offer from Barclays, Bam's offer simply states that she "will continue to receive [her] current base salary or applicable commission based remuneration."  Cafasso Decl. Ex. C.

The offer made to Bam covers base salary and does not incorporate the bonus obligations set forth in the Bam Employment Agreement. *See, e.g., PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (explaining that "New York follows … common law … requiring that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt") (internal quotation marks, emphasis and citation omitted). On September 22, 2008, Bam accepted the offer of employment, became an at-will employee of Barclays and was then "required to comply with all applicable Barclays rules, regulations and policies … ." Cafasso Decl. Ex. C. Bam became a Barclays employee under a new set of terms and conditions and left behind her claim to a bonus. It is not plausible to allege on these facts that Barclays has any obligation to pay bonus compensation that is the subject of a no-longer-applicable employment agreement with Lehman that Barclays has not assumed. Accordingly, Bam's second breach of contract claim fails to state a claim upon which relief may be granted.

On the basis of the foregoing analysis, Bam's third cause of action – her claim for wages under New York Labor Law § 193(1) – necessarily fails as well. A "plaintiff cannot assert a statutory claim for wages under the Labor Law if [s]he has no enforceable contractual right to those wages." *Tierny v. Capricorn Investors, L.P.*, 592 N.Y.S.2d 700, 703 (1st Dep't 1993). Because Barclays never had any contractual obligation to pay bonus amounts specified in the Bam Employment Agreement, it follows logically that the failure by Barclays to pay these amounts does not constitute a violation of the New York Labor Law. Accordingly, Bam's third cause of action fails to state a claim upon which relief may be granted, and her complaint will be dismissed.

*Conclusion*

For the reasons stated, the complaints in the Coreth Adversary Proceeding and the Bam Adversary Proceeding do not state any claims against Barclays upon which relief may be granted.  Barclays never agreed to pay bonus compensation to either Coreth or Bam in connection with written offers of employment made separately to these Transferred Employees and never agreed to assume or be bound by any provisions of their respective employment agreements with Lehman.  The plaintiffs do not have standing as third-party beneficiaries of the APA to pursue claims against Barclays that arise out of their prepetition employment contracts with Lehman, and their claims are otherwise without merit.

The Motion of Defendant Barclays Capital Inc. to Dismiss Adversary Complaint in the Coreth Adversary Proceeding [ECF No. 5] and the Motion of Barclays Capital Inc. to Dismiss Amended Complaint in the Bam Adversary Proceeding [ECF No. 14] are granted, and Barclays is directed to submit appropriate orders consistent with this decision.

IT IS SO ORDERED.


Dated: New York, New York
       February 22, 2011

                                                          *s/ James M. Peck*
                                                    Honorable James M. Peck
                                                    United States Bankruptcy Judge